UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


GREGORY JONES                         CIVIL ACTION NO. 11-cv-2116

VERSUS                                JUDGE HICKS

WARDEN, LOUISIANA STATE               MAGISTRATE JUDGE HORNSBY
PENITENTIARY


## REPORT AND RECOMMENDATION

**Introduction**

A DeSoto Parish jury convicted Gregory Jones ("Petitioner") of aggravated rape in

connection with his attack on former girlfriend Korese Lard.  He was sentenced to life in

prison.  His conviction was affirmed on direct appeal.  State v. Jones, 8 So.3d 845 (La. App.

2d Cir. 2009).  Petitioner also pursued a post-conviction application in the state courts.  He

now seeks federal habeas corpus relief on the grounds that (1) the evidence was insufficient,

(2) the trial court improperly allowed other crimes evidence, and (3) his counsel was

ineffective in several respects.  For the reasons that follow, it is recommended the petition

be denied.

**Sufficiency of the Evidence**

**A.  The Testimony**

Korese Lard testified that she was 16 years old and had a four-month-old daughter,

Niasa, when she met Petitioner and began dating him.  The relationship continued until just

before Ms. Lard's 18th birthday.  Petitioner continued to call Ms. Lard and even broke into

her home and came to her workplace.  She went to court and obtained a restraining order against Petitioner in January 2007.  Soon afterward, she gave birth to a second child. Paternity testing showed that Petitioner was not the father of the oldest child, and Ms. Lard was adamant that Petitioner was not the father of the younger child either.  She denied that the couple had any consensual sex after they stopped dating.

Ms. Lard testified that Petitioner raped her on her 18th birthday.  She reported the crime to the police, but Petitioner's family persuaded her to drop the charges, with promises that Petitioner would receive mental health treatment.  Petitioner's mother admitted that no treatment was obtained.

The incident that gave rise to this case occurred on March 7, 2007, about four weeks after Ms. Lard gave birth to her youngest child.  Ms. Lard testified that she was in her apartment with her four-year-old daughter.  The younger child had been born prematurely and was still in the hospital.  Ms. Lard heard her door opening and looked up to see Petitioner, who entered yelling and cursing.  Ms. Lard told her daughter to put her head down on the couch.  Petitioner grabbed Lard by her hair and started punching her and dragged her into the bedroom.  Lard testified that she was wearing a nightgown, and Petitioner ripped off her underclothes.  He then stuck his fingers inside her vagina and started scraping the inside. Lard screamed and tried to fight back, but Petitioner punched her in the face and began to rape her.  He opened a curtain to see if Ms. Lard's mother, who lived across the street, had been alerted to the screaming, and he saw a kitchen knife that Lard kept on the windowsill to protect herself.  He pointed the knife at her but did not cut or stab her.  Afterward,

Petitioner took Lard to the bathroom, where he used a towel to clean himself.  He then put Lard in a tub of water, soaped his hand, and put it inside her vagina.  He told her not to tell anyone or call the police.

Ms. Lard called her mother, who called the police.  Detective Johnny Zamarripa testified that he responded on behalf of the Mansfield Police Department.  He saw that Ms. Lard's clothes were torn, she was very distraught and crying, and her face was swollen and had marks on it.  Lard reported that Petitioner came to her house and beat and raped her.  The officer said he could tell from what he saw at the house that there had been a struggle, but he did not see any sign of a break-in.  Detective Ronnie Adams responded to the hospital to see the victim.  He testified that he immediately noticed that the left side of her face was swollen, her left eye was swollen shut, and her eyelid was bleeding.

Sherry Stephenson, Ms. Lard's mother, testified that the couple's relationship had ended about a year before this incident.  Petitioner had nonetheless continued to harass Lard and break into her apartment.  Ms. Stephenson testified that on the night of the crime her daughter's face was "all messed up," with her right eye closed and the other eye bleeding. Stephenson corroborated Lard's testimony about the first rape accusation and why Lard dropped those charges.

A registered nurse who was a certified sexual assault nurse examiner performed an examination of the victim at the hospital emergency room.  The nurse could not complete a full examination because of the victim's injuries, the most noticeable of which was the avulsion or digging out of skin, that occurred in the area between the vaginal opening and

the labia.  Testing with a special dye indicated friction and tears that were inconsistent with consensual sexual intercourse.  They were also not consistent with having given birth approximately five weeks earlier.  Other documented injuries included facial abrasions and bruises, and multiple scratches and bruises on the body.  There was an area on the back of the victim's left calf that resembled a bite mark.

DNA samples were taken from the victim's vagina and the bite mark.  A DNA expert testified that the DNA from the vaginal sample was consistent with Petitioner's DNA type.  If a person were randomly pulled from the population and compared to the sample, the probability that he would match was one in 75.1 trillion.  There was a mixture of DNA at the bite mark that came from both Ms. Lard and Petitioner.  The likelihood that the DNA came from those two versus Ms. Lard and another individual was 11.5 billion to one in favor of the mix coming from Ms. Lard and Petitioner.

Petitioner's mother testified that Korese and her mother told Petitioner's family that Niasa was Petitioner's child.  They brought the baby to Petitioner's parents' house, where the child stayed for weeks at a time.  Korese also lived with the family on and off for about three years.  Photographs of a baby shower were introduced, as well as other photos that showed Petitioner and other members of his family with the child.  Petitioner's mother testified that the couple did break up in 2006, "but they never stopped seeing each other," and Korese "steadily called the house."  She said she believed Korese's current boyfriend attacked her despite the DNA and other evidence linking her son to the crime.  She admitted to helping convince Korese to drop the prior rape charge.

Petitioner's father testified that his family took Korese and Niasa into their home after they were put out by Korese's mother.  The two stayed with Petitioner's family for about three years, and Korese said that Petitioner was the child's father.  He said Korese accused Petitioner of raping her "about three times," but the couple always got back together.  He said he disapproved of the relationship because Korese frequently cheated on Petitioner.

Petitioner testified that he had a long relationship with Korese and believed for a time that Niasa was his child.  He even got the child's name tattooed on his neck when he was 17.  He discussed Korese's original rape charge against him and claimed that she had also made a rape charge against nine boys who had sex with her at the same time.  He stated that he had consensual sex with her a number of times after the false allegation and even after the protective order issued.  He said that Korese accused him of rape many times, but he always went back to her "like a dummy."

Petitioner testified that Korese called him at 8:00 p.m. on March 7, 2007 and invited him over.  She let him in the apartment, and he visited with her child.  Korese then allegedly asked him to come to her room to talk about some things.  Petitioner said she began talking about relationships and how her new baby was his child.  Petitioner said Korese asked if he was willing to get back with her and be a family, even though she was going with another man at the time.  Petitioner said he replied that he did not love her anymore, but she began to kiss him and overcame his reluctance.  He admitted touching her vagina area and said that she winced and told him he rubbed it a little too hard, after which he noticed she was bleeding.  Petitioner said Korese admitted to being on her period.  She nonetheless insisted

on having sex, and they did so for about an hour in various positions.  Petitioner denied beating the victim and suggested that her alleged screaming would have been heard by neighbors in the apartments where the walls were thin.  He also testified that his hand was too large to have been inside her as she testified.  Petitioner admitted licking the victim on her legs and engaging in rough sex but said he "didn't bite her on purposely."

### B.  Burden on Petitioner

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).   "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

### C.  Analysis

Petitioner challenged the sufficiency of the evidence on direct appeal.  The state appellate court reviewed the testimony and other evidence in detail, recited the applicable Jackson standard, and found that the evidence was sufficient to support the jury's verdict. It noted in particular the victim's testimony that Petitioner beat and raped her, and the consistent observations of police officers and the examining nurse.  Tr. 395-401.

Petitioner argues that there were no signs of forced entry, the victim's hair was too short to be pulled as she testified, thin walls would have alerted neighbors to any screaming, his hand was too large to fit inside the victim, there were no marks or bruises on him to suggest the victim fought back as she claimed, and the prior claim or claims of rape made the victim's testimony incredible.  Most if not all of those issues were explored during the examination and cross-examination of the witnesses.  It was then the jury's role to take such matters into account and assess the credibility of the witnesses.  "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995).

There will almost always be inconsistencies or grounds to challenge the credibility of a victim's testimony, but there was corroborating evidence in this case that allowed a rational juror to accept the victim's testimony and convict Petitioner.  More important, the state court's application of the deferential Jackson standard cannot be said to have been so wrong as to be an objectively unreasonable application of that law.  Because "fairminded jurists could disagree on the correctness of the state court's decision," it was not contrary to or an

unreasonable application of clearly established federal law. <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011).

Petitioner also argues that the evidence was insufficient because, after the conviction, he obtained affidavits from two women who testified that they knew the victim and that she told each of them that Petitioner did not rape her.  One of them states in her affidavit that the victim said she was mad at Petitioner for fooling around with another girl, and that is why she accused him of rape.  Tr. 405-07.  <u>Jackson</u> held that when a challenge to a conviction is brought under Section 2254, the applicant is entitled to habeas relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."   <u>Jackson</u>, 99 S.Ct. at 2791-92.   The state court's adjudication of the <u>Jackson</u> claim, based on the record presented at trial, was entirely reasonable.  Relief is not permitted on this claim.[1]  The affidavits will be discussed in more detail in connection with the ineffective assistance of counsel claim.

**Other Crimes Evidence**

Ms. Lard's mother testified on direct examination that her daughter told her the relationship with Petitioner was over, but Petitioner kept harassing her.  The prosecutor asked

_____

[1]Petitioner did not file an application for a supervisory writ to the Supreme Court of Louisiana after his direct appeal.  He did not, therefore, exhaust his state court remedies with respect to the <u>Jackson</u> claim on direct appeal.  He presented the <u>Jackson</u> claim again in his post-conviction application, but the trial court and appellate court, which rendered the only reasoned opinions, stated that the claim was procedurally barred because it was fully litigated and denied on appeal.  Tr. 466, 496, and 512.  The State did not directly assert a procedural bar defense to the claim. The court has chosen to address the claim on the merits rather than invoke the bar *sua sponte*.

the mother if she were ever present when such harassment happened.  The mother said she was, and the prosecutor asked, "Well what did you see?"  The mother answered that her daughter lived across from her "and he always breaking into her apartment," which would result in the mother calling the police.  She then stated that either she or the police (it was not clear) asked Petitioner to stop breaking in the house, stop following the victim, stop threatening the man she was with, and the like.  "But he still come back."  Tr. 134.  The prosecutor later asked Ms. Lard herself to tell the jury how Petitioner would contact her after they stopped dating.  She replied, "He would call and he would break, you know, break into my house."  Tr. 161.

Petitioner argues that his conviction should be overturned because the prosecutor deliberately elicited information about other crimes or wrongful acts that should not have been admitted in evidence.  Petitioner's heading for this claim invokes due process and equal protection, but the body of his argument is focused on state evidentiary rules and related jurisprudence.  The trial court denied the claim on post-conviction by categorizing the admission of the statements as harmless error.  It noted the substantial evidence of guilt from the victim, DNA expert, and examining nurse.  Tr. 466.  The appellate court noted that there was no contemporaneous objection to the evidence, which foreclosed review of the issue. Tr. 496.  The State has not asserted a procedural bar defense to the claim, and the court elects to address the claim on the merits rather than raise the defense *sua sponte*.

Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were

satisfied.  Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief.  The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair.  Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).  The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict.  Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

To obtain habeas relief on such a claim, the petitioner must show that the state court's adjudication of the claim was contrary to or an objectively unreasonable application of the Supreme Court's  holdings on this issue.  The state court's decision is not unreasonable if there are reasonable arguments to either grant or deny relief.  Yarborough v. Alvarodo, 124 S.Ct. 2140, 2149-50 (2004).

The testimony that Petitioner broke into the victim's apartment a number of times was certainly not beneficial to the defense.  The record does not indicate, however, that the prosecutor deliberately elicited the comments.  Rather, the witnesses offered the testimony in response to permissible questions.  Had the State followed state procedure and given advance notice of intent to offer such evidence, there is a reasonable likelihood the evidence would have been found admissible as relevant to Petitioner's motive and intent in a case where a principal dispute was whether his visit was with or without the victim's consent. The state court held that the evidence, even if improperly admitted, was harmless in view of the overall record.

Reasonable jurists could perhaps debate the correctness of that decision, but they would not all say that it was incorrect.  The mentions of prior break-ins certainly did not help the defense, but any prejudice was arguably harmless in the context of all the other evidence of guilt.  There is very little possibility that the jury would have voted for a different verdict had only the challenged statements been excluded from evidence.  The state court's decision therefore withstands review under Section 2254(d), and habeas relief is not allowed on this claim.

**Ineffective Assistance of Counsel**

**A.  Introduction; Burden**

Petitioner argues that his trial counsel was ineffective for not objecting to the other crimes evidence, not interviewing exculpatory witnesses, and otherwise not sufficiently challenging the prosecution's case in various respects.  Petitioner presented these claims in his post-conviction application.  The trial court set forth the applicable standard of <u>Strickland v. Washington</u>, 104 S.Ct. 2052 (1984).  It then determined that Petitioner received adequate counsel because counsel "prepared opening and closing statements, introduced and cross-examined witnesses, and produced evidence for jury consideration."  The court also found that, "in light of the given testimony and evidence, petitioner cannot show that but for the errors, the result would be different."  Tr. 466.  The appellate court specifically addressed only one claim, discussed below, and generally found that Petitioner "fails to demonstrate that he was not provided with effective assistance of counsel."  Tr. 496.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland, 104 S.Ct. at 2064.  Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold.  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable."  Id.

**B.  Other Crimes**

Petitioner argues that counsel should have objected to testimony that Petitioner previously had broken into the victim's apartment.  That testimony was discussed above.  He also complains that counsel elicited such information himself during cross-examination of the victim's mother.  That testimony happened when counsel was trying to establish that,

despite the mother's direct-examination testimony about prior incidents, she lacked personal knowledge of such incidents.  He asked her, for example, if she was present at any such incident or witnessed them herself.  Counsel then changed the subject and asked if the victim had tried to leave Petitioner.  The mother answered yes, but she then returned to the prior subject and added, "He even tried to jump on the woman at the apartment complex up there."  Counsel moved to strike that response.  Tr. 151-52.

The state courts did not address this claim with any specificity.  The Section 2254(d) standard applies "even where there has been a summary denial."  Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).  The petitioner can overcome his burden only by showing that there was no reasonable basis for the state court's decision.  The federal habeas court must determine what arguments or theories could have supported the state court's decision, and it must then ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with Strickland.  Id., citing Harrington, 131 S.Ct. at 784-86.

The state court could have reasonably determined that an objection to the other crimes testimony would have been overruled given the testimony's relevance to showing Petitioner's motive and intent when he visited the victim on the evening of the crime.  A principal issue was whether he arrived in response to an invitation or was an unwelcome surprise visitor.  And the state court specifically offered the theory that the other crimes evidence, even if admitted improperly, was harmless in light of the overall record.  The state court could also have reasonably determined that counsel was not ineffective when, during cross-examination on one topic, the witness without warning returned to a prior topic and mentioned other crime

Page 13 of  18

evidence.  Fair-minded jurists might disagree with those conclusions, but that room for disagreement among reasonable persons precludes habeas relief on this claim.

### C.  Exculpatory Witnesses

Petitioner argues in his memorandum that he told counsel before trial that "several" of the victim's close friends would be willing to testify on his behalf.  The only such friends he identifies are Rashunda Murphy and Patricia Atkins.  His post-conviction application was accompanied by affidavits from the two women.  They were dated March 4, 2010, which was several months after Petitioner's conviction became final after direct appeal.  Each woman testified: "After he was convicted, I wrote Gregory a letter explaining that I did not believe he was guilty of raping Korese because of things she had told me."

Ms. Murphy said Korese "revealed to me that Gregory did not rape her."  She added that Korese would accuse people of wrongdoing when she was mad at them, and she had wrongfully accused Petitioner and other men of rape in the past.  Ms. Atkins offered similar testimony and added that Korese admitted to her that she was mad at Petitioner "for messing with some girl named Germany Simpson and that is why she accused him of raping her." Tr. 405-07.

Petitioner states in his memorandum that he told counsel about witnesses before trial, but he did not offer the state court an affidavit or other particular evidence to support that assertion.  Each potential witness says that she wrote Petitioner "[a]fter he was convicted" to express her belief in his innocence.  Nothing in the affidavits state when Korese allegedly admitted to the women that her rape accusation was false.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2000).  In addition, for Petitioner to demonstrate the requisite <u>Strickland</u> prejudice, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial."  <u>Id</u>.  Petitioner did not clearly demonstrate to the state courts that either of these witnesses were made known to counsel before trial or that they would have been willing to testify *at the trial* (not a later date) favorably to the defense.[2]  Given the skepticism with which such claims are viewed, the state court could reasonably have rejected this claim as inadequately supported by the evidence that was offered.

### D.  Other Arguments

Petitioner argues that counsel should have interviewed the victim's neighbors and asked if they heard any screaming or scuffling coming from her apartment that evening.  He suggests a test should have been conducted to determine whether neighbors could have heard screaming from the area, and he faults counsel for not subpoenaing the victim's phone records to support his testimony that the victim called him that evening and invited him to her apartment.  He also argues that counsel should have subpoenaed a police officer who

---

[2] It appears counsel at least knew about Ms. Atkins.  Counsel asked Petitioner's father if it was true he offered to pay the victim $3,000 to drop the charges.  The father denied making such an offer, but he said a woman came to him and said Korese would drop the charges if he would get her $2,000.  Ms. Atkins' name was mentioned, with the suggestion being she was the one who made the offer.  Tr. 260-62.

allegedly examined Petitioner and could have testified that he found no scratches, bruises, or signs of struggle.  Finally, he suggests that counsel should have retained a child psychologist to interview the victim's four-year-old child and attempt to gain helpful evidence.

The Constitution guarantees only an attorney who provides reasonable competence in representing the accused.  It does not mandate a counsel who anticipates every trial scenario that might arise or who employs the best possible strategy.  There will always be potential witnesses who were not called or questions not asked that, in hindsight, might have improved a defense effort.  The mere existence of such possibilities or speculation about them, however, is not sufficient to warrant habeas relief.  Petitioner did not present the state court with any affidavits from witnesses, phone records, or police reports that would have lent substance to these arguments or caused the state court to believe there was a reasonable likelihood of a different verdict had such evidence been offered.  Given the speculative nature of Petitioner's presentation, the state court's denial of these <u>Strickland</u> claims was not objectively unreasonable.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus relief be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of February, 2015.

Mark L. Hornsby
U.S. Magistrate Judge